UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| SCIENTIA ENERGY, INC., | Civil No. 11-CV-554 (JRT/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| VINCO, INC., | |
| Defendants. | |

---

This matter came before the undersigned United States Magistrate Judge upon the Motion of the Defendant Vinco, Inc., to Dismiss Counts II, III, and IV of the Plaintiff's Complaint. A hearing on the Motion was conducted on June 9, 2011. The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). For the reasons outlined below, the Court recommends that the Defendant's Motion to Dismiss be GRANTED IN PART.

## I.  BACKGROUND

The following facts form the basis of the Amended Complaint.[1] Plaintiff is a California corporation which sells wind turbines and related equipment. (Am. Compl. ¶¶ 1, 5). Defendant is a Minnesota corporation in the renewable energy business including selling and installing wind turbines and related equipment. (Am. Compl. ¶¶ 2, 6). From February 2008 to May 2009, the Plaintiff sold used wind turbines and associated equipment to the Defendant worth in excess of $600,000. (Am. Compl. ¶ 7). Plaintiff contends that the Defendant still owes it over

---

[1] Plaintiff's original complaint was filed on March 3, 2011 (Docket No. 1). After the Defendant filed its motion to dismiss, the Plaintiff filed an amended Complaint on March 31, 2011. (Docket No. 11).

$240,000 in delinquent payments arising from the sale. (Am. Compl. ¶ 8). The Plaintiff seeks payment for the goods in Count I of the complaint.

In addition, the Plaintiff asserts a number of other claims which are the subject of the Defendant's present motion to dismiss under Fed. R. Civ. P. 12(b)(6). The additional claims allege misappropriation of trade secrets, interference with a contractual relationship, and interference with prospective advantage. The Defendant argues that the Plaintiff has not asserted sufficient facts in Counts II, III, and IV of its Complaint as required by Fed. R. Civ. P. 8(a). The Court considers the factual allegations Plaintiff makes in support of Counts II, III, IV and the Defendant's arguments as to why the factual allegations are insufficient below.

## II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).[2] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. (citations and quotations omitted). Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." Id.

When analyzing a 12(b)(6) argument, courts "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). Next, courts look at any remaining well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." Id. The

---

[2] In its brief, the Plaintiff argues that Iqbal and Twombly do not apply to the relatively straightforward claims alleged in its Complaint. However, at the oral argument regarding the present motion, the Plaintiff conceded that the standard of review set forth in Iqbal and Twombly for evaluating the sufficiency of factual allegations forming the basis of a Complaint applies to this case.

plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." See id. at 1950, 1952.

When analyzing a Plaintiff's complaint, the Court must take the plaintiff's factual allegations as true. Id. at 1949-50. However, a "formulaic recitation of the elements of a cause of action" is insufficient for a complaint to survive a motion to dismiss. Id. Still, facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. Twombly, 550 U.S. at 555. In addition, courts "should read the complaint as a whole, not parsed piece by piece to determine whether each allegation in isolation is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

**IV.   Discussion**

    **A.   Count II Misappropriation of Trade Secrets in Violation of Minn. Stat. § 325C.**

To allege a misappropriation of trade secret claim, a plaintiff must show (1) the existence of a trade secret, and (2) the defendant's improper acquisition, disclosure or use of the trade secret. See Minn. Stat. § 325C.01.

        **1.   Existence of a Trade Secret**

A trade secret is information (1) that is not generally known or readily ascertainable, (2) that derives independent economic value from its secrecy and (3) that has been subject to reasonable efforts to maintain its secrecy. See Minn. Stat. § 325C.01; Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 899 (Minn. 1983).

As to the first element in a misappropriation of trade secrets claim, whether a trade secret exists, Defendant asserts that the Plaintiff merely recites the language of the act and the elements

of the claim without including any factual support for its claim.  In response, the Plaintiff asserts that the facts in its Complaint are sufficient to state plausible claim for relief.

In support of its argument that a trade secret exists, Plaintiff asserts that the computer source code for controllers and manufacturing blue prints for the Windmatic turbine are not generally known or readily ascertainable.  (Compl. ¶¶ 10, 12).  Additionally, Plaintiff alleges that a person who has the "source code has a distinct advantage over one who does not have access to the source code and has to attempt to create his own source code for a wind turbine controller." (Compl. ¶ 10).  Moreover, Plaintiff contends that blue prints have economic value because "[a]lthough reverse-engineering of a wind turbine design is potentially possible, it would require the expenditure of time and money, such that obtaining blueprints is much more valuable to one who intends to make use of them than is creating new blue prints through reverse engineering." (Compl. ¶ 10).

The Defendant argues that these allegations are insufficient because they are merely generalized conclusions without specific facts demonstrating that the information is not generally known, derives independent economic value from its secrecy, and has been subject to reasonable efforts to maintain its secrecy.  (Def.'s Reply Mem. [Docket No. 18], p. 3).  Further, Defendant contends that Plaintiff's claim that the secrecy of the information gives the information economic value because "a person who has the source code has a distinct advantage over one who does not have access to the source code" says nothing about the facts that support the value or usefulness of the source code."  Id.[3]

---

[3] Furthermore, the Defendant alleges that Plaintiff's allegation that the manufacturing blueprints have "economic value" because reverse engineering of a wind turbine would require the expenditure of time and money is inadequate because reverse engineering is a proper method of obtaining knowledge.  However, whether reverse engineering is a legal way of obtaining knowledge is irrelevant to Plaintiff's factual assertions.  Plaintiff contends that using the manufacturing blue prints would be cheaper than lawfully utilizing reverse engineering, and therefore, that blue prints have economic value.  This factual allegation supports a claim for misappropriation of a trade a secret because at this stage in the proceedings the Plaintiff must only state a plausible claim for relief.

Plaintiff alleges enough facts showing that the source code and blue prints are not generally known or readily ascertainable and that they derive independent economic value from its secrecy to meet the pleading standard set forth in <u>Iqbal</u> and <u>Twombly</u>. While the Complaint cannot be called overly detailed, it nevertheless contains statements as to both the blue prints' and the source codes' economic value. At this stage in the litigation, the Plaintiff has "give[n] the defendant fair notice of what the claim is and the grounds upon which it rests" because the Plaintiff has put the Defendant on notice as to what the alleged trade secrets are and that they have economic value. <u>Twombly</u>, 550 U.S. at 555.

Additionally, Plaintiff asserts sufficient facts to demonstrate that it has made a reasonable effort to maintain the secrecy of the source code and the blue prints. Specifically, Plaintiff asserts that on March 3, 2009, the Plaintiff sent the Defendant a three-page "Confidentiality and Non-Disclosure Agreement." (Compl. ¶ 11). Although not attached, Plaintiff indicates that the agreement "defined Confidential Information, indicated that plaintiff would be providing such Confidential Information to defendant, provided that upon plaintiff's request defendant would return all such information to plaintiff and destroy all copies, and provided that no use or disclosure of Confidential Information shall be made by defendant without prior written consent of plaintiff." (Compl. ¶ 11). Moreover, an agent of the Defendant continued to reaffirm to an agent of the Plaintiff that the Defendant agreed to the terms of the confidentiality agreement, and that he needed to have another agent of the Defendant sign it. (Compl. ¶ 11). Plaintiff maintains that it reasonably relied on the Defendant's representations that the parties were bound by the terms of the confidentiality agreement, and that it would eventually be executed. (Compl. ¶ 11).

The Defendant asserts that the Plaintiff's allegations regarding confidentiality are insufficient because the confidentiality agreement referenced in the Complaint was sent in March

2009, over a year after the Plaintiff began selling wind turbines to the Defendant in February 2008. (Def.'s Reply Mem., p. 4). According to the Defendant, this fact is "tantamount to an admission that [the Plaintiff] didn't take reasonable measures to protect the information." (Def.'s Reply Mem., p. 5).

Defendant's arguments opposing the Plaintiff's reliance on the confidentiality agreement confuse the standard on a Rule 12(b)(6) motion to dismiss with the standard required on a Rule 56 motion for summary judgment. At the very least, the Plaintiff's allegations regarding the existence of a confidentiality agreement raises a factual issue as to whether the Plaintiff took reasonable steps to maintain the confidentiality of the trade secrets. The fact that the Plaintiff did not send the confidentiality agreement until after the relationship between the parties started does not mean that no other steps were taken earlier to maintain the confidentiality of the source code and the blue prints. Additionally, Plaintiff contends that the parties had other discussions regarding the applicability of the confidentiality agreement which constitutes another separate fact showing that confidentiality was maintained. At this stage in the litigation, Plaintiff's factual allegations support a plausible claim that it used reasonable efforts to keep the alleged trade secrets confidential.

### 2. Misappropriation of a Trade Secret

"Misappropriation" includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means...." Minn. Stat. § 325C.01, subd. 3(i). Improper, in turn, is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means...." Minn. Stat. § 325C.01, subd. 2.

As to whether the Plaintiff adequately pled that the Defendant misappropriated the trade secret, the Defendant contends that "[n]owhere in the Complaint does Plaintiff allege any facts that support the naked allegation that Defendant knew of should have known that the trade secrets were acquired by 'improper means' [sic]." (Def.'s Mem., p. 6 [Docket No. 8]).

Plaintiff asserts a number of facts supporting its allegation that the trade secret was misappropriated. For instance, the Plaintiff asserts that the Defendant acquired the trade secrets "under circumstances in which defendant knew or should have known that the trade secrets were acquired by improper means." (Compl. ¶ 13). According to the Plaintiff, Roger Tuck, an agent of the Plaintiff, disclosed secrets to the Defendant. (Compl. ¶ 13). Tuck was an officer and director of Plaintiff. (Compl. ¶ 14). The Defendant knew or should have known that Tuck did not have authority to disclose such trade secrets to the Defendant. (Compl. ¶ 13). Moreover, the Defendant knew or should have known that Tuck owed a duty to the Plaintiff to maintain the trade secrets and limit their use. (Compl. ¶ 14). Further, the Defendant knew that that the Plaintiff was in an ongoing dispute with Tuck, but that Tuck proposed to the Defendant that "they work together to go into direct competition with Plaintiff." (Compl. ¶ 14).

The Defendant maintains that these factual assertions are insufficient because Plaintiff "does not make an affirmative allegation as to how Defendant allegedly 'misappropriated' its claimed trade secrets." (Def.'s Reply Mem., p. 5). According to the Defendant, Plaintiff's allegations that Mr. Tuck owed the Plaintiff a fiduciary duty not to disclose information and that the Plaintiff and Mr. Tuck were in an ongoing dispute does not meet the standards of Iqbal and Twombly because the law states that a common law duty of confidentiality only exists in an employer-employee relationship for information which the employer has treated as secret. As such, the employee is entitled to fair notice as to what material must be kept confidential. (Def.'s

7

Reply Mem., p. 5).  Thus, the Defendant contends that Plaintiff's assertion that Mr. Tuck was under a fiduciary duty not to disclose the information is insufficient because the Plaintiff has to assert facts showing that Mr. Tuck knew the material needed to be kept secret.

Once again, the Defendant's argument that the Plaintiff has not alleged sufficient facts as to whether the Defendant misappropriated a trade secret confuses the standard on a Rule 12(b)(6) motion to dismiss with the standard of review under a Rule 56 motion for summary judgment. Plaintiff alleges that the Defendant knew or had reason to know that the information provided by Mr. Tuck, a corporate officer of the Plaintiff, was confidential and should not be used.  Plaintiff further states that Mr. Tuck owed a duty of confidentiality to the Plaintiff.  However, the Defendant alleges that such a duty of confidentiality only exists in an employer-employee relationship for information which the employer has treated as confidential and has given notice to the employee of its confidentiality.  At this stage in the litigation, without the benefit of discovery, it is unclear whether the Plaintiff acted to keep the information secret and informed Mr. Tuck of such.  Plaintiff does not have a duty to prove that element at this stage, but rather only allege facts that the Defendant "knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."  Minn. Stat. § 325C.01.  Here, Plaintiff's factual assertions make such a claim plausible.

For these reasons, the Court recommends that the Defendant's motion be denied as to Plaintiff's misappropriation of trade secrets claim.

### B.  Count III: Interference with a Contractual Relationship

To allege a claim for interference with a contractual relationship, the Plaintiff must demonstrate the "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the

contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." Kallok v. Medtronic, Inc., 573 N.W.2d 356, 362 (Minn. 1998).

In support of Count III, Plaintiff asserts that it had a contract with Wintec Energy, Ltd. ("Wintec") to supply gearboxes. (Compl., ¶ 17). According to the Plaintiff, the Defendant knew about the contract and intentionally caused its breach. (Compl., ¶ 18). Allegedly, Defendant's affiliated company, Renewtech, which is located at the same address as the Defendant, has installed its test turbine in Palm Wind Park owned by Wintec on the same row as Plaintiff's test turbine. (Compl., ¶ 18). Moreover, Renewtech purchased a forklift from a leasing company that had been previously leased by Plaintiff's affiliate. (Compl., ¶ 18). Plaintiff further contends that the Defendant induced Wintec to terminate its business relationship with Plaintiff and enter into a relationship with the Defendant. (Compl., ¶ 19). Further, Defendant used the misappropriated trade secrets in order to do business with Wintec. (Compl., ¶ 19). Plaintiff contends that this information shows that the Defendant attempted to replicate Plaintiff's business model and used Mr. Tuck to obtain Wintec's business. (Pl.'s Mem., p. 4-5).

In response, the Defendant contends that this information contains no facts as to element four of the claim, namely that the Defendant intentionally procured Wintec's breach of contract. (Def.'s Mem., p. 7). Furthermore, the Defendant maintains that the Plaintiff has not set forth any facts showing that the Defendant's actions were unjustified. (Def.'s Mem., p. 8). As to this element, the Defendant further contends that the Plaintiff must plead that the Defendant employed improper means in conducting business and inducing Windtec to breach its contract with the Plaintiff. Id. at 8-9.

Plaintiff has asserted enough facts demonstrating that the Defendant acted intentionally to procure the breach without justification. Viewing the Complaint as a whole, the Plaintiff has

asserted facts showing that the Defendant's affiliate intentionally misappropriated the alleged trade secrets in order to obtain Wintec's gearbox contract for itself. Plaintiff provides evidence that the Defendant used its former employee, Mr. Tuck, to obtain Wintec's business and that Renewtech now has wind turbines next to Plaintiff's on Wintec's wind farm. Additionally, contrary to the Defendant's assertions, the Plaintiff has demonstrated improper means because it has alleged that the Defendant used its misappropriated trade secrets in order to interfere with the gearbox contract between the Defendant and Wintec procure Wintec's business. Without the alleged trade secrets, according to the Plaintiff, the Defendant would not have been able to procure Wintec's business and interfere with the contract.[4]

On the basis of the above analysis, the Court recommends that the Defendant's motion to dismiss Count III of the Complaint be denied.

### C. Count IV: Interference with Prospective Advantage

A claim of tortious interference with prospective business advantage requires:

(1) the existence of a reasonable expectation of economic advantage or benefits belonging to the plaintiff; (2) that Defendants had knowledge of that expectation of economic advantage; (3) that Defendants wrongfully and without justification interfered with Plaintiffs' reasonable expectation of economic advantage or benefit; (4) that in the absence of the wrongful acts of Defendants, it is reasonably probable that Plaintiffs would have realized their economic advantage or benefit; and (5) that Plaintiffs sustained damages as a result of this activity.

Shukh v. Seagate Technology, LLC, 2011 WL 1258510 at *12 (D. Minn. 2011) (listing elements of interference with prospective advantage when considering defendant's motion to dismiss).

In support of Count IV, Plaintiff asserts that it had the expectation of entering into additional contacts with Wintec. (Compl. ¶ 20). In July 2008, the Plaintiff entered into

---

[4] The Defendant additionally argues that the Plaintiff's claim should fail as to Count III because it is based on facts concerning Renewtech, the Defendant's affiliate, rather than the conduct of the Defendant itself. Howeer, wehther the Defendant is not legally responsible for the action its affiliate, Renewtech, cannot be ascertained as a matter of law on the basis of the facts in the Complaint. Therefore, the Court rejects the Defendant's arguments in this regard and leaves the issue for decision on a subsequent motion for summary judgment or trial.

discussions with Wintec about installing a wind turbine at one of their wind farms. (Compl. ¶ 20). The Plaintiff and Wintec agreed to build three new turbines for Wintec and to install and test them at a wind farm. (Compl. ¶ 20). In expectation of this agreement, Plaintiff ordered gearboxes, which were eventually delivered. (Compl. ¶ 20). However, in December 2009, Windtec informed the Plaintiff that it was rethinking the delivery of the gearboxes. (Compl. ¶ 20). Windtec had no further communication with Plaintiff after February 2010. (Compl. ¶ 20). Plaintiff contends that the Defendant knew about his prospective relationship and intentionally and improperly interfered with the relationship and caused Windtec to lose its relationship with the Plaintiff. (Compl. ¶ 21).

Defendant alleges that the Plaintiff has not asserted enough facts in support of Count IV. Defendant contends that there are no facts pled which support a claim that the Defendant committed a wrongful act that caused Wintec to cease its discussions with Plaintiff or committed any wrongful acts of interference. (Def.'s Reply, p. 7).

The Court finds that the Plaintiff's allegations as to Count IV are insufficient to survive a Rule 12(b)(6) motion to dismiss. Plaintiff's factual allegations in support of Count IV simply restate the elements of an interference with prospective advantage claim. Such a "formulaic recitation of the elements of a cause of action" will not survive a 12(b)(6) motion to dismiss. Iqbal, 129 S.Ct. at 1949-50. More specifically, Plaintiff makes no allegations that "the Defendant "wrongfully and without justification interfered with Plaintiffs' reasonable expectation of economic advantage or benefit." Shukh, 2011 WL 1258510 at *12. Here, Plaintiff has not alleged any specific facts as to what the Defendant did that interfered with the Plaintiffs' expectation of economic advantage. The Plaintiff has not alleged any facts as to how or when the Defendant or even its affiliate improperly interfered (beyond acting as a mere competitor) or

induced Wintec to discontinue its business relationship with the Plaintiff. In additional, no facts assert how the alleged trade secrets acted as a significant factor or gave the Defendant an advantage in being able to do business with Wintec.

Therefore, the Court recommends that the Defendant's motion to dismiss as to Count IV of the Complaint be granted.

**V.     CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein,

1.     IT IS HEREBY RECOMMENDED that Defendant's Motion to Dismiss [Docket No. 6] be GRANTED IN PART.


Dated: July 5, 2011                                     ___s/Leo I. Brisbois_____
                                                        LEO I. BRISBOIS
                                                        United States Magistrate Judge


**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by July 19, 2011, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.